UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:17-CR-12 |
| v. ) | |
| ) | JUDGE GREER |
| JONATHAN DISHNER ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Jonathan Dishner, and the defendant's attorney, David Leonard, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

Count One, that is, a conspiracy to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

The punishment for this offense is as follows: a minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, five years to life on supervised release, and a mandatory $100.00 assessment.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other

facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant was a member of a drug trafficking organization ("DTO"), operating primarily in Sullivan County, Tennessee and Southwest Virginia during the time frame of the conspiracy charged in the superseding indictment. Since approximately January 2015, the organization obtained crystal methamphetamine, primarily from Georgia, which was transported to Sullivan County, Tennessee and Southwest Virginia, where it was distributed.

On June 21, 2016, Defendant was arrested in Bristol, TN in possession of approximately three (3) ounces of crystal methamphetamine, digital scales, drug paraphernalia and a handgun (Iver Johnson .32 caliber revolver). Pursuant to his arrest, Defendant's cellular telephone (telephone number 423- 341-7265) was searched. Saved in the Contacts List of the telephone were the following numbers: (423) 293-4083 – "Big T" (Timothy Green), (423) 534-4640 – "Tim" (Timothy GREEN), (423) 217-5705 – "Mark" (Mark Morrison), (423) 217-9021 – "Brian" (Brian Danner), (701) 540-3307 – "Q" (Quinton Hatcher), and (423) 612-4663 – "Ray Ray" (Roderick McMorris).

The following text message conversations were saved on Defendant's phone:

**June 13, 2016**

Tosha LNU to Jonathan Defendant), *"4239634666 this is Richard Barnetts number Tim wants u to call him and get to know him…work…by the way this is Tosha"*

Defendant to Tosha LNU, *"Ok I'm on the way to pick his money up can u call me please?"*

These text messages reflect that Tosha LNU contacted Defendant and asked him to contact Richard Barnett in order to collect drug proceeds for Timothy Green.

**June 14, 2016**

2

Defendant to Quinton Hatcher, *"Whats up home you never called me. Do you need me to come by I'm seeing him this after noon"*

Defendant to Brian Danner, *"Bro I need that 1350 + 300 on gun I could of soils it two days ago but your my boy and try to call your brother he owes me 65 I got to have ulit"*

Defendant to "Fat Boy", *"Hey bro u str8 I will brang it just let me know"*

"Fat Boy" to Defendant, *"Na I'm good at the moment"*

In these text messages, Defendant contacted Quinton Hatcher and Brian Danner in an effort to collect drug proceeds. Defendant contacted "Fat Boy" in an effort to sell methamphetamine to him.

**June 15, 2016**

Defendant to Timothy Green, *"I'm on my way bro I've got what u ask for and then some I love u old man I will see u in 45 min"*

Defendant to Quinton Hatcher, *"Look bro I know u doing your thing bur I just came up and gave B T 5000 bed to get that 460 if u can holler"*

These text messages reflect that Defendant dropped off drug proceeds to Timothy Green. Defendant then contacted Quinton Hatcher to advise Hatcher that he had given Green (AKA "Big Tim" AKA "B T") $5,000.00 in drug proceeds and needed to collect $460.00 from Hatcher from the sale of methamphetamine.

**June 15, 2016**

(240) 578-3898 to Defendant, *"Hey bro I need you to call me I was needing 1 whole thing for real"*

3

Case 2:17-cr-00012-JRG-MCLC   Document 395   Filed 10/19/17   Page 3 of 13   PageID #: 3149

Defendant to (240) 578-3898, *"Bro I crashed I got whatever bro"*

The user of telephone number (240) 578-3898 ordered one (1) ounce of crystal methamphetamine ("1 whole thing") from Defendant.

**June 17, 2016**

Defendant to "Jermy", *"Yeah today's good deals 210_8 or 90 ah within a hour"*

Defendant to Mark Morrison, *"Look bro u just called Tim this is Dishner he ask me. To call u bur u want answer my calls we have a problem bro I work for Tim it's father's day he is in the middle of spending time with his kids so he told me to call u u need to let me know what's up bro"*

In these text messages, Defendant contacted "Jermy" to advise him that if "Jermy" wanted an "8 ball" of crystal methamphetamine ("8") for $210.00, or a gram for $90.00, he would have to do it within the hour. Defendant then contacted Mark Morrison at the request of Timothy Green to collect a drug debt.

**June 18, 2016**

Roderick McMorris to Defendant, *"Hay bro I got 300$ tored a half bro wts up"*

McMorris to Defendant, *"Wts up bro how longs it going to be bro"*

Defendant to McMorris, *"Bro I've been up at exit 13 I'm leaving in a min or two when I get close I will call u"*

Defendant to McMorris, *"Hey bro do u want to met me on Anderson St I'm going be there in about 10 min"*

McMorris to Defendant, *"Na I found some bro I'm good"*

4

In these text messages, Roderick McMorris ordered a half (½) ounce of methamphetamine from Defendant. Defendant agreed to sell the methamphetamine to McMorris, however McMorris had already purchased it from someone else.

**June 18, 2016**

"Brandan" to Defendant, *"You okay buddy? I gots your money just call me when your Good I gotta tell you something"*

Defendant to "Brandan", *"Yeah I'm str8 I got some pink ice cream"*

(240) 578-3898 to Defendant, *"Bro I need to talk to you I got a half gone for 8 if you can holler at me love bro"*

In these text messages, "Brandan" advised Defendant that he had drug proceeds for Defendant, which he would pay when Defendant had more methamphetamine ("when your good"). Defendant told "Brandan" that he was in possession of pink crystal methamphetamine ("pink ice cream"). The user of telephone number (240) 578-3898 advised Defendant that he had ½ ounce of crystal methamphetamine sold for $800.00 whenever Defendant could deliver it.

**June 20, 2016**

Defendant to (423) 217-8768, *"I'm on the road. I got what ever you need. 13 for an o. 750 for a half. 8 balls are 240. 100 a g. I don't like selling g but I will."*

In this message, Defendant advised the user of (423) 217-8768 of the following prices: $1,300.00 for an ounce ("o"), $750.00 for ½ ounce ("half"), $240.00 for 1/8 ounce ("8 balls"), and $100.00 for a gram ("g") of crystal methamphetamine.

5

**June 20, 2016**

Mark Morrison to Defendant, *"I just said I would call when I leave here. Are u still up at Tim's"*

Morrison to Defendant, *"Did u forget about me bro"*

Defendant to Morrison, *"No bro I crashed where u at bro I'm ready to give you shit and get his"*

Defendant to Morrison, *"I've counted this money five times it still ain't right it's bro it's 4,700"*

In these text messages Mark Morrison contacted Defendant in order to give Defendant drug proceeds belonging to Timothy Green. Defendant met with Morrison, dropped off additional methamphetamine ("give you shit") and picked up money ("get his"), then advised Morrison that the money only added up to $4,700.00.

On July 13, 2016, Defendant was interviewed at the Sullivan County Tennessee jail. Defendant stated that he had been a user and distributor of drugs for a long time, interrupted only by his periodic stints in jail. Defendant stated that in April 2016, he saw Steven Hilliard in jail who supplied Defendant with contact information for Tim Green. Defendant stated that when released from jail, he attempted to contact Green, but that Green would not return his calls.

Defendant stated that shortly thereafter, he was with a female who purchased crystal methamphetamine from Tracy Arnold. Defendant stated that he knew that Arnold was selling crystal methamphetamine for Tim Green and made Arnold take him to Green's residence in Kingsport, TN. Defendant stated that after telling Green that he was sent by Hilliard, Green explained to him how the operation worked and what was expected of Defendant if he was working for Green.

6

Defendant stated that he sold approximately two (2) kilograms of crystal methamphetamine per week for Green for the last two (2) months. Defendant stated that he also served as "muscle" for Green and collected drug debts. Defendant stated that he was aware that Green's residence was recently "raided" by law enforcement. Defendant stated that several days prior to this, he assisted Green in unloading approximately six (6) to ten (10) kilograms of crystal methamphetamine from Green's white Mazda RX-8 at an unknown residence in Hawkins Co., TN.

On November 30, 2016, Brian Danner was interviewed at the Sullivan County Jail in Blountville, TN. Danner was in custody on drug and gun related charges. Danner stated the following:

Prior to June 2016, Danner sold crystal methamphetamine for Tim Green, who was obtaining kilograms of methamphetamine at a time. For six (6) or seven (7) months prior this, Danner sold approximately twelve to sixteen ounces of crystal methamphetamine per week for Green. Danner worked with Defendant, and between the two (2) of them they paid Green $10,000.00 every 24 to 48 hours. Danner profited approximately $4,000.00 to $6,000.00 per week while working for Green. Danner accompanied Defendant to collect drug debts from Green's customers. Defendant acted as "muscle" for Green.

Defendant agrees that he conspired with his co-defendants to distribute methamphetamine (actual) and that he is responsible for the distribution of at least 150 grams but less than 500 grams of methamphetamine (actual). *The parties further agree that no USSG §3B1.1 aggravating role enhancement applies to this Defendant.*

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

   a) the right to plead not guilty;

7

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the

defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means

9

Case 2:17-cr-00012-JRG-MCLC   Document 395   Filed 10/19/17   Page 9 of 13   PageID #: 3155

the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the

offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a)     The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b)     The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c)     The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11.     This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United

11

Case 2:17-cr-00012-JRG-MCLC   Document 395   Filed 10/19/17   Page 11 of 13   PageID #: 3157

States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
UNITED STATES ATTORNEY

10.19.17
Date

By: *[signature]*
J. GREGORY BOWMAN
Assistant United States Attorney

10-19-17
Date

*[signature]*
JONATHAN DISHNER
Defendant

10-19-17
Date

*[signature]*
DAVID LEONARD
Attorney for the Defendant

13