UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | DOCKET NO. CR-2-17-12 |
| | . | |
| GOVERNMENT, | . | |
| | . | |
| VS. | . | GREENEVILLE, TN |
| | . | APRIL 16, 2018 |
| JONATHAN ANDY LOGAN DISHNER, | . | 1:37 P.M. |
| | . | |
| DEFENDANT. | . | |
| | . | |
| . . . . . . . . . . | . | |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: U.S. DEPARTMENT OF JUSTICE
OFFICE OF U.S. ATTORNEY
J. GREGORY BOWMAN, AUSA
220 WEST DEPOT STREET, SUITE 423
GREENEVILLE, TN 37743

FOR THE DEFENDANT: LAW OFFICE OF JERRY J. FABUS, JR.
JERRY J. FABUS, JR., ESQ.
4136 BRISTOL HIGHWAY, SUITE 1
JOHNSON CITY, TN 37601

COURT REPORTER: KAREN J. BRADLEY
RPR-RMR
U.S. COURTHOUSE
220 WEST DEPOT STREET
GREENEVILLE, TN 37743

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT PRODUCED BY COMPUTER.

(CALL TO ORDER OF THE COURT AT 1:37 P.M.)

THE COURT: GOOD AFTERNOON.

ALL RIGHT. MS. HOPSON, WOULD YOU CALL THE FIRST CASE, PLEASE.

THE CLERK: USA VERSUS JONATHAN ANDY LOGAN DISHNER, CASE NUMBER CR-2-17-12.

THE COURT: ALL RIGHT. MR. DISHNER HAS FILED A MOTION SEEKING THE APPOINTMENT OF NEW COUNSEL IN THIS CASE. MR. FABUS, HAVE YOU DISCUSSED THE MOTION WITH MR. DISHNER?

MR. FABUS: YOUR HONOR, I HAVEN'T HAD ANY FACE-TO-FACE COMMUNICATION WITH HIM SINCE I DELIVERED THE PAPERS TO THE JAIL AND HE BECAME MAD THAT DAY. THAT VISIT DIDN'T LAST TWO OR THREE MINUTES. HE SAID I WAS FIRED THAT DAY. HE HAD FIRED ME TWO OR THREE WEEKS BEFORE, AND I HAD KEPT WORKING ON IT, HE WAS JUST FRUSTRATED, AND THEN HE WOULD CALL AND APOLOGIZE. I HAVEN'T ATTEMPTED TO SPEAK TO HIM SINCE BECAUSE THAT DAY WAS, IT WAS -- I COULDN'T EVEN TALK, IT WAS JUST HIM YELLING AND CUSSING, AND I JUST LEFT IT AT THAT.

NOW, I HAVEN'T FILED A MOTION TO WITHDRAW. I SPOKE WITH DAVID LEONARD. IT WAS NOT ANY DIFFERENT -- HIS INTERACTIONS WITH MR. LEONARD WEREN'T ANY DIFFERENT THAN HIS WITH ME, SO I JUST LOOK AT IT AS IT'S HIM BEING FRUSTRATED WITH THE SYSTEM. I'M THE ONE PERSON HE CAN

LASH OUT AT, WHICH IS UNFORTUNATE BECAUSE I'M THE ONE PERSON REALLY TRYING TO HELP HIM; BUT, YOU KNOW, IF YOU'RE WONDERING IF IT'S IRREPARABLE, FROM MY POINT OF VIEW, I HAVE HAD SOME REALLY DIFFICULT CLIENTS. I HAD ONE LAST YEAR WHEN I HAD THAT BENCH TRIAL, THAT GUY WAS A NIGHTMARE TO DEAL WITH, YOU SAW ME STILL DO EVERYTHING I COULD AND GOT HIM UNDER THE GUIDELINE RANGE. SO FROM MY POINT OF VIEW IT DOESN'T AFFECT MY ABILITY TO REPRESENT HIM, IT'S JUST WHETHER HE WANTS TO BE PART OF THE PROCESS OR NOT.

THE COURT: ALL RIGHT. THANK YOU.

MR. DISHNER, COME UP TO THE PODIUM, PLEASE.

I'VE READ THE HANDWRITTEN MOTION YOU FILED WITH THE COURT, BUT TELL ME WHY YOU WANT NEW COUNSEL APPOINTED.

THE DEFENDANT: WELL, SIR, YOUR HONOR, THIS IS, THIS IS THE REASON, I GUESS, WHY ME AND MR. FABUS HAS HAD A FEW HEATED ARGUMENTS, I WILL ADMIT TO THAT. LIKE I'VE EXPLAINED TO YOU, THIS IS MY LIFE, AND I'M STILL, YOU KNOW, ME AND MY OTHER LAWYER, ME AND HIM HAD A HEATED ARGUMENT BECAUSE HE WENT AND SPOKE TO MR. LEONARD AFTER, YOU KNOW, HE'S BEEN OFF MY CASE; AND I EXPLAINED TO HIM I DIDN'T FEEL LIKE THAT WAS RIGHT BECAUSE IT WAS THE TRANSCRIPTS I WANTED, AND HE COME TO ME AND SAID THAT HE WENT AND TALKED TO HIM, HE DIDN'T FEEL LIKE HE SHOULD HAD TO GET THE TRANSCRIPTS. I THINK HIS WORDS WAS HE BELIEVED MR. LEONARD, THAT HE WASN'T GOING TO GET THE TRANSCRIPTS,

THAT HE KNEW, HE KNEW HIM THIS LONG THAT HE BELIEVED HIM; SO THAT'S WHY I COME -- THAT'S WHY I GOT SO UPSET AND TOLD HIM IF THAT'S HOW, YOU KNOW, IF HE WAS GOING TO GO TO MY OLD LAWYER AND HE WAS FRIENDS WITH HIM LIKE THAT, I WOULD JUST GET ANOTHER LAWYER.

THE COURT: YOU KNOW YOU CAN'T JUST FIRE MR. FABUS; DON'T YOU?

THE DEFENDANT: WELL, I UNDERSTAND THAT, I UNDERSTAND. THAT'S WHERE I WENT WRONG, BUT THIS IS --

THE COURT: AND YOU UNDERSTAND THAT MR. LEONARD AND MR. FABUS TOGETHER ARE TWO OF THE MOST SEASONED ATTORNEYS ON OUR CJA PANEL; DO YOU UNDERSTAND THAT?

THE DEFENDANT: YES, SIR; YES, SIR.

THE COURT: DOES IT SUGGEST ANYTHING TO YOU ABOUT YOUR INTERACTIONS WITH THEM THAT YOU CAN'T GET ALONG WITH EITHER OF THEM?

THE DEFENDANT: WELL, THIS IS THE PROBLEM, SIR. JUST HERE RECENTLY MR. FABUS -- THIS IS WROTE OUT FOR YOU, I'M GOING TO READ IT TO YOU. I TOLD YOU I CAN'T READ THAT GOOD, BUT I'M GOING TO READ IT TO YOU.

IT STARTS OFF, YOUR HONOR, THANK YOU FOR YOUR TIME. I'M ASKING, AS YOU KNOW I ALREADY FILED A MOTION, I'M ASKING FOR MY PROCEEDING TO BE POSTPONED TODAY, ASKING THE COURT TO APPOINT ME NEW COUNSEL DUE TO THE FACTS MY PREVIOUSLY APPOINTED COUNSEL, MR. FABUS AND MR. LEONARD,

HAVE NOT JUST, JUST, JUSTLY REPRESENTED ME BY, BY ME BREAKING ATTORNEY-CLIENT CONFIDENTIALITY -- THAT'S THE WAY I FEEL -- AND DELIVERING, WHICH MR. FABUS, DELIVERING MY LEGAL DOCUMENTATION, PAPERWORK, PLEA BARGAIN, MY PLEA BARGAIN, CLOTHING, MY PLEA BARGAIN, STATEMENTS -- I GUESS DID YOU DELIVER MY TRANSCRIPTS?

THE COURT: YOU TALK TO ME, MR. DISHNER.

THE DEFENDANT: I DON'T KNOW WHAT ALL IT WAS OTHER THAN MY PLEA BARGAINS. IT WAS MY PLEA BARGAIN, MY TRANS -- I REALLY, IT WAS ALL MY MOTION FOR DISCOVERY. IT WAS WIDE OPEN. HE GIVE IT TO THE SECRETARY UP FRONT AT THE JAIL OPENED UP. IT WAS UNSEALED. THEY BROUGHT IT TO ME TO SIGN AT GREAT HOURS. IT WENT THROUGH NUMEROUS PEOPLE'S HANDS. I REFUSED TO SIGN. JERRY LAWS BROUGHT IT TO ME. CAPTAIN LOWE WENT THROUGH IT. THE WOMAN UP FRONT TOOK IT. AFTER, YOU KNOW, I REFUSED TO SIGN FOR IT, HE CALLED MR. FABUS, SAID, PLEASE COME GET THIS, YOU KNOW YOU SHOULDN'T DO THIS. THEY HAD DISCUSSION. HE COME BACK, TOLD ME WHAT WAS SAID. YOU CAN TALK TO HIM ABOUT THAT, IT'S ON RECORD, AND HE SAID HE'D TESTIFY TO IT WHENEVER IT COMES RIGHT DOWN TO IT. I SAID ALL RIGHT. TWO DAYS LATER HE BROUGHT MORE PAPERWORK, I'M GUESSING IT'S MY TRANSCRIPTS.

THE COURT: YOU DIDN'T LOOK AT IT?

THE DEFENDANT: I DIDN'T SIGN FOR IT BECAUSE --

THE COURT: THAT WASN'T MY QUESTION.

THE DEFENDANT: IT WAS OPENED UP.

THE COURT: DID YOU LOOK AT WHAT WAS IN THE ENVELOPE?

THE DEFENDANT: IT WASN'T IN AN ENVELOPE, SIR.

THE COURT: WELL, DID YOU LOOK AT WHAT WAS IN THE PAPERS?

THE DEFENDANT: (DEFENDANT MOVES HEAD SIDE TO SIDE).

THE COURT: ALL RIGHT. THEN HOW DO YOU KNOW THAT SOME ATTORNEY-CLIENT PRIVILAGE WAS VIOLATED --

THE DEFENDANT: WELL, I KNOW, I KNOW --

THE COURT: -- IF YOU DIDN'T LOOK AT THE PAPERS?

THE DEFENDANT: I KNOW THE MOTIONS FOR DISCOVERY BECAUSE IT WAS MY, IT WAS MINE --

THE COURT: WELL, A MOTION IS GOING TO BE PUBLIC RECORD. ANYBODY CAN GO INTO OUR CM-ECF SYSTEM AND LOOK AT IT. I'M ASKING YOU WHAT IT IS THAT WAS PRIVILEGED COMMUNICATION THAT YOU THINK WAS DELIVERED THERE TO SOMEBODY THAT SHOULDN'T HAVE GOT IT?

THE DEFENDANT: I'M TALKING ABOUT EVERYTHING THAT I'VE BEEN WRITING BACKWARDS AND FORTH TO MY OTHER LAWYER AND EVERYTHING --

THE COURT: WE'RE NOT TALKING ABOUT MR. LEONARD HERE, I'VE ALREADY RELIEVED MR. LEONARD. I WANT TO KNOW ABOUT MR. FABUS.

DEFENDANT: WELL, I AIN'T SURE. LIKE I SAID, HE DIDN'T -- NOTHING HAS BEEN --

THE COURT: NOW, MR. DISHNER, LISTEN TO ME. YOU MADE AN ALLEGATION HERE THAT YOUR ATTORNEY MR. FABUS HAS VIOLATED THE ATTORNEY-CLIENT PRIVILEGE, AND YOU'RE STANDING THERE TELLING ME THAT YOU DON'T EVEN KNOW WHAT THESE DOCUMENTS WERE --

THE DEFENDANT: I'M TELLING YOU THOSE WERE --

THE COURT: -- IS THAT WHAT YOU'RE TELLING ME?

THE DEFENDANT: -- MY DOCUMENTS, MY DOCUMENTS.

THE COURT: BUT IF YOU DIDN'T LOOK AT THEM, HOW DO YOU KNOW THAT?

THE DEFENDANT: WHAT I WROTE TO MY OTHER LAWYER WAS IN MY PAPERWORK THAT MY FIANCEE DROPPED OFF TO HIM. I KNOW WHAT I PUT IN MY PAPERWORK. THAT'S WHAT I'M TRYING TO EXPLAIN TO YOU, SIR, SHE GIVE THEM TO HIM. I COULDN'T TAKE THEM TO THE OTHER JAIL WITH ME, SIR. I KNOW WHAT I WROTE TO MR. LEONARD ABOUT MY CASE. IT'S THERE. IT'S PERTAINING TO MY CASE.

THE COURT: IF YOU DIDN'T LOOK, HOW DO YOU KNOW IT WAS THERE?

THE DEFENDANT: BECAUSE MY FIANCEE TOOK IT TO

HIM AND GIVE IT TO HIM.

THE COURT: MR. DISHNER, DID YOU NOT WANT MR. FABUS TO OBTAIN YOUR FILE FROM PRIOR COUNSEL?

THE DEFENDANT: I DON'T UNDERSTAND, SIR.

THE COURT: WELL, I MEAN, IT MAKES PERFECT SENSE TO ME THAT ONE OF THE FIRST THINGS MR. FABUS WOULD DO WHEN HE WAS APPOINTED TO REPRESENT YOU WAS GET YOUR FILE FROM MR. LEONARD WHO HAD PREVIOUSLY REPRESENTED YOU, SO WHY DO YOU OBJECT TO THAT?

THE DEFENDANT: OBJECT TO WHAT? I'M OBJECTING THAT HE BROUGHT MY PAPERWORK OPENED UP TO THE JAIL. IT'S MY LEGAL WORK. THAT'S WHAT I'M OBJECTING TO.

THE COURT: ALL RIGHT, MR. FABUS --

THE DEFENDANT: IT'S ILLEGAL FOR HIM TO DO THAT.

THE COURT: -- WHAT'S HE TALKING ABOUT?

MR. FABUS: WELL, AND THAT'S WHY I WAS GOING TO CLEAR IT UP, JUDGE. HIS GIRLFRIEND CALLED ME A COUPLE OF DAYS AFTER I WAS APPOINTED.

THE DEFENDANT: THAT'S WHAT I WAS TRYING TO EXPLAIN.

THE COURT: MR. DISHNER, ONE AT A TIME.

MR. FABUS: AT SOME POINT HE HAD -- SOMEHOW SHE HAD GOTTEN A BUNCH OF PAPERWORK MR. LEONARD MUST HAVE SENT, OKAY. SHE GAVE IT TO ME JUST IN A BAG. I LOOKED AT

IT. IT LOOKED LIKE ALL LEGAL PAPERWORK. WHEN I TOOK IT TO THE FRONT OF THE JAIL, I ASKED THEM AND SAID, THIS CAME FROM A THIRD PARTY, IT'S HIS LEGAL PAPERWORK, DO I GIVE IT TO HIM OR DO YOU GUYS STILL HAVE TO CHECK IT TO MAKE SURE THERE ISN'T -- AND SOMEBODY COULD PUT A SUBOXONE STRIP OR SOMETHING ON THE BACK OF SOMETHING, JUDGE. SO I ASKED THEM. THEY SENT THE CAPTAIN UP, SHE SAID, WE HAVE TO GO THROUGH AND SEARCH IT, WE WON'T READ IT. I STOOD THERE AND WATCHED THEM FOR A COUPLE OF MINUTES. THEY PUT GLOVES ON, THEY JUST PATTED -- THEY SAT THERE AND WENT THROUGH A SACK OF PAPER LIKE THIS CHECKING EVERY PAGE. THEY DIDN'T READ IT. I DIDN'T STAY THERE THE WHOLE TIME AND WATCH ALL THAT; BUT WHILE I WAS WAITING FOR, TO GO BACK AND SEE HIM, I PROBABLY TALKED WITH HER FOR ABOUT FIVE MINUTES, AND JUST ASKING ABOUT WHAT THEIR POLICY WAS, THEY SAID THEY ALWAYS CHECKED THAT WHEN IT'S COMING IN. ALL I DID WAS ASK BECAUSE I WANTED TO MAKE SURE I DIDN'T BREAK ANY JAIL PROTOCOL.

THE COURT: ALL RIGHT, MR. DISHNER, IS THAT WHAT YOU DID, YOU ASKED YOUR GIRLFRIEND TO PICK UP PAPERS FROM MR. LEONARD? IS THAT WHAT YOU DID?

THE DEFENDANT: SIR, SHE PICKED THEM UP FROM THE JAIL BECAUSE THEY WOULDN'T LET ME TAKE THEM WHEN I WENT TO SALEM.

THE COURT: OKAY, SO THESE WERE DOCUMENTS YOU

HAD IN YOUR POSSESSION THAT THE JAIL TOOK FROM YOU WHEN YOU WERE TRANSFERRED?

THE DEFENDANT: YES, SIR.

THE COURT: AND YOUR GIRLFRIEND PICKED THEM UP?

THE DEFENDANT: UH-HUH. YES, SIR.

THE COURT: ALL RIGHT, AND DELIVERED THEM TO MR. FABUS, WHO THEN DELIVERED THEM TO THE JAIL?

THE DEFENDANT: MR. FABUS DELIVERED -- YES, MR. FABUS BROUGHT THEM TO THE JAIL.

THE COURT: WHAT MAKES YOU THINK THAT IS SOMEHOW A VIOLATION OF ATTORNEY-CLIENT PRIVILEGE?

THE DEFENDANT: I MEAN, MY DOCUMENTS THAT I WROTE TO MR. LEONARD, EVERYTHING THAT I'VE SAID TO HIM IN CLIENT, YOU KNOW, LIKE PERSONAL, PERSONAL STUFF THAT I'VE SAID ABOUT MY CASE TO MR. LEONARD, IF I WANT TO GO TO TRIAL, IF SOMEBODY MIGHT HAVE READ MY STUFF, IF I WANT TO GO TO TRIAL, SOMEBODY THAT WORKS AT THAT JAIL, SOME OF THEIR FAMILY COULD BE AT MY TRIAL ON MY -- ON THE TRIAL, SOMEBODY COULD HAVE READ MY CASE, SOMETHING ABOUT MY CASE THAT I WROTE TO MR. LEONARD.

THE COURT: WELL, FOR THAT MATTER YOUR GIRLFRIEND COULD HAVE BEEN CALLED AS A WITNESS; RIGHT?

THE DEFENDANT: YES, SIR. WELL, I MEAN --

THE COURT: I MEAN, YOU -- NOTHING -- WHEN YOU TURNED IT OVER TO HER, IT'S NOT PRIVILEGED. SHE'S NOT A

LAWYER. SHE'S CERTAINLY NOT YOUR LAWYER.

THE DEFENDANT: BUT THAT'S NOT, YOU KNOW, WE'RE NOT TALKING ABOUT MY GIRLFRIEND, I'M TALKING ABOUT THE JAIL.

THE COURT: I'M TALKING ABOUT YOUR GIRLFRIEND, MR. DISHNER.

THE DEFENDANT: RIGHT. WELL, I'M NOT, YOU KNOW, I'M TALKING ABOUT THE JAIL.

THE COURT: I'M GOING TO TELL YOU SOMETHING, MR. DISHNER, I'VE APPOINTED TWO OF THE BEST LAWYERS I'VE GOT TO REPRESENT YOU. YOU CAN'T GET ALONG WITH EITHER ONE.

THE DEFENDANT: I'M NOT SAYING I DON'T GET ALONG WITH HIM, I'M SAYING I THOUGHT IT WAS ILLEGAL, SIR. I THINK IT'S ILLEGAL THAT -- THAT'S WHAT -- IT SCARED ME IS WHAT I, WHAT -- IT SCARED ME THAT THEY HAD IT OVER THERE FOR EIGHT HOURS IS WHAT IT WAS HERE.

THE COURT: MR. DISHNER, TO TELL YOU THE HONEST TRUTH, I DON'T CARE WHAT YOU THINK IS LEGAL, OKAY.

THE DEFENDANT: OKAY.

THE COURT: NOW, IF I APPOINT YOU ANOTHER LAWYER AND YOU CAN'T GET ALONG WITH THAT LAWYER AND YOU CURSE THAT LAWYER, YOU'RE GOING TO BE REPRESENTING YOURSELF IN THIS CASE, DO YOU UNDERSTAND THAT? I AM NOT GOING TO LET YOU HAVE THESE OUTBURSTS AGAINST COUNSEL,

CURSE AT THEM, MAKE IT DIFFICULT FOR THEM TO REPRESENT YOU AND THEN ALLOW YOU TO COME IN HERE TO COMPLAIN ABOUT THAT. YOU UNDERSTAND?

THE DEFENDANT: WELL, IF I AIN'T DOING NOTHING WRONG, SIR, YOU LEAVE HIM ON MY CASE. IF HE DIDN'T DO NOTHING WRONG, JUST LEAVE HIM ON MY CASE. IF I'M IN THE WRONG, I'M IN THE WRONG.

THE COURT: YOU KNOW, IF HE HAD BROUGHT DOCUMENTS THAT HE GOT FROM YOUR GIRLFRIEND TO THE JAIL --

THE DEFENDANT: I WAS WRONG.

THE COURT: -- IN A SEALED ENVELOPE, THEY STILL WOULD HAVE OPENED IT.

THE DEFENDANT: IN FRONT OF ME AND, IN FRONT, AND --

THE COURT: WELL, THEY OPEN LEGAL MAIL IN FRONT OF YOU; RIGHT?

THE DEFENDANT: YES, IN FRONT OF ME.

THE COURT: NOT MAIL DELIVERED BY A NON-LAWYER THIRD PARTY.

THE DEFENDANT: RIGHT, SIR, THEY --

THE COURT: DO YOU UNDERSTAND THAT, MR. DISHNER?

THE DEFENDANT: YES, SIR. YES, SIR. THEY STILL HAVE TO GO IN FRONT OF ME, IN FRONT OF ME. IT DON'T MATTER WHO DELIVERS THEM, THEY HAVE TO LOOK AT IT IN FRONT

OF ME. YOU KNOW, BY LAW, LEGAL MAIL, IT DON'T MATTER WHO BRINGS IT TO THE JAIL, THEY HAVE TO GO LOOK AT IT IN FRONT OF ME.

THE COURT: LISTEN TO ME, MR. DISHNER. YOU'RE DOING A LOT OF TALKING AND NO LISTENING. IF THESE DOCUMENTS CAME FROM YOUR GIRLFRIEND, THEY ARE NOT COMMUNICATIONS BETWEEN YOU AND YOUR LAWYER; DO YOU UNDERSTAND THAT? BECAUSE SHE'S NOT YOUR LAWYER.

THE DEFENDANT: I UNDERSTAND THAT, SIR; BUT HE HAD THEM BROUGHT TO ME TO GO THROUGH THEM TO CHECK THEM, THAT'S WHAT I'M SAYING. IT WAS MINE AND DAVID LEONARD'S STUFF, SHE JUST PICKED THEM UP FROM THE JAIL BECAUSE I COULDN'T TAKE THEM WITH ME. SHE'S NOT A LAWYER. SHE DIDN'T KNOW WHAT THEY WAS, JUST ME AND HIM AND DAVID LEONARD DOES. THAT'S WHAT I'M SAYING. I AIN'T --

THE COURT: DO YOU HAVE ANY OTHER COMPLAINTS ABOUT MR. FABUS?

THE DEFENDANT: (SHAKES HEAD FROM SIDE TO SIDE).

THE COURT: HAS HE FAILED TO FILE SOME MOTION THAT YOU THOUGHT OUGHT TO BE FILED?

THE DEFENDANT: JUST GETTING TRANSCRIPTS.

MR. FABUS: THEY'RE AT THE JAIL.

THE COURT: TRANSCRIPTS HAVE BEEN PREPARED.

THE DEFENDANT: IF THAT WAS AT THE JAIL, THAT'S

WHAT I'M SAYING, IF THEY WAS DROPPED OFF AT THE JAIL, IT'S -- IF THEY WAS DROPPED OFF AT THE JAIL, THAT'S ANOTHER THING, SO --

THE COURT: WELL, YOU'RE LOSING ME, WHAT'S WRONG WITH THAT?

THE DEFENDANT: NOTHING, NOTHING. IF THEY'RE DROPPED OFF AT THE JAIL, THAT'S --

THE COURT: HAS HE DONE ANYTHING ELSE THAT YOU THINK WAS INEFFECTIVE ASSISTANCE?

THE DEFENDANT: NO. SO THEY'RE AT THE JAIL?

MR. FABUS: THEY'RE AT THE JAIL, I DROPPED THEM OFF THE DAY --

THE DEFENDANT: I DIDN'T SIGN FOR THEM BECAUSE THEY WAS OPENED UP TOO, SO.

MR. FABUS: THE DAY I FILED THE MOTION I DROPPED THEM OFF BECAUSE YOU'D ASKED --

THE DEFENDANT: I JUST WANT TO LET THAT NOTE ON THE RECORD THAT THEY WAS DROPPED OFF OPEN.

THE COURT: ARE YOU GOING TO STOP THESE OUTBURSTS AGAINST YOUR LAWYER?

THE DEFENDANT: YES, SIR.

THE COURT: STOP CURSING AT HIM?

THE DEFENDANT: YES, SIR.

THE COURT: COOPERATE WITH HIM?

THE DEFENDANT: YES, SIR.

THE COURT: MR. DISHNER, HERE'S THE PROBLEM, WHEN YOU RELEASE THOSE DOCUMENTS TO SOME THIRD PARTY, THEY ARE NO LONGER PRIVILEGED.

THE DEFENDANT: YES, SIR.

THE COURT: AND BEYOND THAT, YOU CAN'T SHOW ANY HARM AT ALL --

THE DEFENDANT: YES, SIR.

THE COURT: -- THAT'S COME TO YOU AS A RESULT OF WHAT HAPPENED HERE --

THE DEFENDANT: OKAY.

THE COURT: -- BECAUSE YOU DON'T EVEN KNOW WHAT WAS IN THE ENVELOPE OR THE BAG, WHATEVER IT WAS.

THE DEFENDANT: OKAY.

THE COURT: WHEN IS THE HEARING ON THE PENDING MOTION SET?

LAW CLERK BERRY: THE MOTION TO WITHDRAW?

THE COURT: THE MOTION TO WITHDRAW.

LAW CLERK BERYY: IT'S NOT BEEN SET YET.

THE COURT: AND IS THAT WHAT THE TRANSCRIPT IS, THE TRANSCRIPT OF THE CHANGE OF PLEA HEARING?

MR. FABUS: WHAT WAS THAT, YOUR HONOR?

THE COURT: IS THIS TRANSCRIPT WE'RE TALKING ABOUT THE TRANSCRIPT OF THE CHANGE OF PLEA HEARING?

MR. FABUS: THE CHANGE OF PLEA AND THE MOTION TO WITHDRAW WAS HEARD IMMEDIATELY BEFORE IT.

THE COURT: SO ARE WE READY TO HAVE A HEARING ON THE MOTION TO WITHDRAW THE PLEA?

MR. FABUS: YES, JUDGE. THE GOVERNMENT HAS FILED THEIR RESPONSE. IT'S RIPE TO BE HEARD.

THE COURT: ALL RIGHT, MR. DISHNER, TO THE EXTENT THE ATTORNEY-CLIENT PRIVILEGE HERE HAS BEEN DAMAGED, IT'S BECAUSE OF YOUR ACTIONS.

THE DEFENDANT: YES, SIR.

THE COURT: EVEN IF THERE WERE SOME SORT OF PRIVILEGED COMMUNICATION AMONG THE DOCUMENTS DELIVERED BY YOUR GIRLFRIEND, MR. FABUS DIDN'T VIOLATE ANY ATTORNEY-CLIENT PRIVILEGE. YOUR OUTBURSTS, YOUR ANGER, YOUR CURSING DIRECTED TOWARD YOUR COURT-APPOINTED COUNSEL IS MISPLACED AND IT HAS TO STOP.

BASED ON WHAT YOU'VE SAID TO ME HERE TODAY AND WHAT YOU WROTE IN THIS MOTION, I DON'T SEE ANY BASIS FOR REPLACING MR. FABUS. HE HAS HANDLED CASES THAT WERE VERY DIFFICULT IN THIS COURT BEFORE, HE HAS REPRESENTED CLIENTS WHO DIDN'T COOPERATE WITH HIM, HE HAS REPRESENTED CLIENTS WHO WERE VERY DIFFICULT; BUT TAKE TO HEART WHAT I SAID TO YOU EARLIER, I WILL NOT TOLERATE THESE KINDS OF OUTBURSTS AGAINST COUNSEL.

THE DEFENDANT: YES, SIR.

THE COURT: I WON'T TOLERATE YOU CURSING COUNSEL; AND IF IT HAPPENS AGAIN, MR. DISHNER, YOU'RE

GOING TO FIND YOURSELF REPRESENTING YOURSELF.

THE DEFENDANT: YES, SIR. IT WON'T HAPPEN AGAIN.

THE COURT: ALL RIGHT, SIR. THE MOTION IS DENIED.

OH, BEFORE YOU LEAVE, WE'RE NOT DONE WITH THE HEARING, BUT YOU MAY SIT DOWN. LET'S SET THIS MOTION TO WITHDRAW THE GUILTY PLEA HEARING. POSSIBLE DATES ARE APRIL 25 AT 9:00, APRIL 30 AT 1:30 OR MAY 30 AT 1:30. COUNSEL, WHEN ARE YOU AVAILABLE?

MR. FABUS: WHAT TIME WAS MAY 30TH, AT 9:00?

THE COURT: 1:30.

MR. FABUS: AT 1:30.

MAY 30TH.

THE COURT: ALL RIGHT. MAY 30 AT 1:30 THEN?

MR. BOWMAN: YES, SIR, YOUR HONOR.

THE COURT: NOW, MR. DISHNER, THAT OBVIOUSLY IS A VERY IMPORTANT PROCEEDING FOR YOU. I WOULD SUGGEST THAT YOU GIVE MR. FABUS YOUR FULL COOPERATION --

THE DEFENDANT: YES, SIR.

THE COURT: -- SO THAT HE CAN PROPERLY PREPARE FOR THAT HEARING, ALL RIGHT.

ALL RIGHT. THEN IT'S SET FOR MAY 30 AT 1:30, AND I THINK THAT CONCLUDES OUR BUSINESS IN THIS CASE TODAY.

MR. BOWMAN: THANK YOU.

THE COURT: THANK YOU ALL VERY MUCH.

(PROCEEDING IS CONCLUDED AT 1:56 P.M.)

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

KAREN J. BRADLEY/S — 09/17/18
SIGNATURE OF COURT REPORTER — DATE